UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

       :

SYLVIA HANLEY, by her attorney in fact,   :
CHARLES STERNBACH, and ALAN      :
BLUMKIN, on behalf of themselves and all  :
others similarly situated,         :

       :

       Plaintiffs,   :

       :       15-cv-5958 (KBF)

      -v-      :

       :

HOWARD A. ZUCKER, M.D., J.D., in his  :
official capacity as Commissioner, New York  :     OPINION & ORDER
State Department of Health, and STEVEN   :
BANKS, in his official capacity as      :
Commissioner, New York City Human    :
Resources Administration,        :

       :

       Defendants.  :

------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 21, 2016

KATHERINE B. FORREST, District Judge:

      Plaintiffs Sylvia Hanley and Alan Blumkin are New York City residents who

had applied for Medicaid-funded personal care services because they suffer from

medical conditions that cause them to require significant assistance with daily

living activities.  They bring this action under 42 U.S.C. § 1983 against the

commissioners of the New York State and City agencies that process applications

for and administer Medicaid, alleging that defendants failed to timely determine

whether plaintiffs are qualified for the Medicaid-funded personal care services

("PCS") and failed to timely commence providing such services.  Such failures,

according to plaintiffs, violate the Medicaid statute, 42 U.S.C. § 1396a(a)(8), and

accompanying regulations promulgated under 42 C.F.R. § 435.912(c)(3).[1]  Plaintiffs also allege that defendants' practices violate the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

In 2012, New York changed its practices from a one-step eligibility determination process (both basic Medicaid eligibility and PCS eligibility determined during one timeframe) to a two-step process (in which Medicaid eligibility is determined first and only thereafter is PCS eligibility determined). Plaintiffs' claims are premised on the legal position that by separating out the process in this manner, defendants have exceeded timeframes imposed by federal regulations.

Before the Court are motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) by both City and State defendants.  Defendants argue that the premise of plaintiffs' legal position is wrong:  that the timeframes established by the regulations apply only to eligibility for Medicaid generally—and not to eligibility for coverage of personal care services.  In addition, defendants argue that plaintiffs have failed to allege sufficient facts to support the alleged violations.

For the reasons set forth below, defendants' motions to dismiss are GRANTED in part and DENIED in part.

---

[1]   Individuals alleging violations of the Medicaid Act and accompanying regulations may, under certain circumstances, bring an action pursuant to 42 U.S.C. § 1983.  See, e.g., Davis v. Shah, --- F.3d ---, 2016 WL 1138768, at *8 (2d Cir. Mar. 24, 2016); Romano v. Greenstein, 721 F.3d 373, 377 (5th Cir. 2013); Shakhnes v. Berlin, 689 F.3d 244 (2d Cir. 2012); Rabin v. Wilson-Coker, 362 F.3d 190, 202 (2d Cir. 2004); Sabree ex rel. Sabree v. Richman, 367 F.3d 180, 192 (3d Cir. 2004); Reynolds v. Giuliani, No. 98 Civ. 8877(WHP), 2005 WL 342106, at *16 (S.D.N.Y. Feb. 14, 2005).

I.    BACKGROUND

    A.    <u>Medicaid</u>

This case requires understanding the requirements of Federal and state laws and regulations regarding Medicaid.  The Court provides an overview of the relevant Medicaid framework below.

    1.    <u>Overview</u>

"Medicaid is a cooperative federal-state program through which the Federal Government provides financial assistance to States so that they may furnish medical care to needy individuals."  <u>Wilder v. Virginia Hosp. Ass'n</u>, 496 U.S. 498, 502 (1990).  Although states are not required to participate in Medicaid, once a state does elect to participate, it must comply with requirements under the federal Medicaid Act and accompanying regulations.  <u>Id.</u>  State plans for Medicaid are governed by rules set forth in 42 U.S.C. § 1396a.

"A state's Medicaid plan defines both the categories of individuals eligible for benefits and the categories of services that are covered for those different groups."  <u>Davis v. Shah</u>, --- F.3d ---, 2016 WL 1138768, at *2 (2d Cir. Mar. 24, 2016).  Plaintiffs in this case seek PCS, which are among the services covered by the Medicaid program in New York.  N.Y. Soc. Serv. Law § 365-a; <u>Rodriguez v. City of New York</u>, 197 F.3d 611, 613 (2d Cir. 1999).  PCS refers to "assistance with nutritional and environmental support functions and personal care functions . . . essential to the maintenance of the patient's health and safety in his or her own

home." 18 N.Y. Comp. Codes R. & Regs.[2] § 505.14(a).

2.   Medicaid Eligibility Determination

The New York Department of Health ("DOH") is the state agency that supervises the operation of the Medicaid program in New York.  (Am. Compl. ¶ 14; N.Y. Soc. Servs. Law § 363-a.)  Local social service districts ("LSSDs")—of which the New York City Human Resources Administration ("NYCHRA") is one—manage the process for Medicaid eligibility determinations and help finance the costs of Medicaid.  (Am. Compl. ¶ 15, 22; N.Y. Soc. Servs. Law §§ 61, 69, 365.)  In addition, in 2012, New York also established a mandatory managed care system for the provision of personal care services.  (Am. Compl. ¶ 21.)

NYCHRA is responsible for basic Medicaid eligibility determinations for New York City applicants.[3]  N.Y. Soc. Servs. Law § 366-a.  Eligibility for Medicaid can be established in one of two ways.  First, the state is required to provide Medicaid to the "categorically needy," meaning those who receive another category of federal financial assistance.   See 42 U.S.C. § 1396a(a)(10)(A)(i); Pharm. Research & Mfrs. of Am. v. Walsh, 538 U.S. 644, 651, n.4 (2003) ("The 'categorically needy' groups include individuals eligible for cash benefits under the Aid to Families with Dependent Children (AFDC) program, the aged, blind, or disabled individuals who qualify for supplemental security income (SSI) benefits, and other low-income groups such as pregnant women and children entitled to poverty-related coverage.").

---

[2]      Hereinafter "NYCCRR."
[3]      Although there are exceptions to this rule, they are not relevant to the instant action.

Second, states may also opt to provide Medicaid benefits to the "medically needy," who are "individuals who meet the nonfinancial eligibility requirements for inclusion in one of the groups covered under Medicaid, but whose income or resources exceed the financial eligibility requirements for categorically needy eligibility."  Walsh, 538 U.S. at 651, n.5; see also 42 U.S.C. § 1396a(a)(10)(C); 42 C.F.R. § 435.301; Schweiker v. Hogan, 457 U.S. 569, 574 (1982).  Medically needy individuals whose incomes or resources are in excess of the applicable requirements are entitled to receive Medicaid subject to a periodic spend-down requirement.  42 C.F.R. 435.831(d).

"New York has chosen to provide Medicaid coverage to both the categorically needy and the medically needy."  Davis, 2016 WL 1138768 at *2.  The NYCHRA is required to notify the applicant in writing of the outcome of their Medicaid eligibility application.[4]  (Am. Compl. ¶¶ 23-24.)

3.   Applications for Personal Care Services[5]

Prior to 2012, individuals seeking Medicaid-funded PCS in New York made an application for PCS together with their applications for eligibility for Medicaid; the two were processed concurrently.  After 2012, however, the state changed its

---

[4]    If an applicant is found eligible for Medicaid, "authorization will be effective back to the first day of the first month for which eligibility is established" and "retroactive authorization will be issued for medical expenses incurred during the three months prior to the month of application for [medical assistance], provided the applicant was eligible in the month in which the medical care and services were received."  18 NYCCRR § 360-2.4.

[5]    The process described below is for non-urgent PCS.  There is a separate process—set forth in separate rules—governing those individuals with immediate needs for PCS.  There is a lawsuit pending in New York Supreme Court, Konstantinov v. Daines, Index No. 114152/07, relating to such applications.

process:  LSSDs such as NYCHRA first determine whether an individual is eligible for Medicaid generally and then evaluates any additional applications for PCS to determine the number of hours of PCS to which the applicant may be entitled.[6]  18 NYCCRR § 505.1, 505.14(b).  Medicaid-funded PCS cannot be initiated before the PCS authorization is complete.  18 NYCCRR § 505.14(b)(5)(i).

As to the second step, the application for PCS, New York law now requires that applicants schedule an evaluation with a "Conflict-Free Evaluation and Enrollment Center" ("CFEEC") to determine whether they require Medicaid-funded PCS for more than 120 days.  (Am. Compl. ¶¶ 25-26.)  A company called Maximus Inc. has contracted with the state to run the CFEEC process.  (Am. Compl. ¶ 26.)  If Maximus determines that the applicant does not require PCS for at least 120 days, the application is denied.  (Am. Compl. ¶ 27.)  If Maximus determines that the applicant does require PCS for at least 120 days, the applicant is determined eligible for PCS.  (Am. Compl. ¶ 28.)  The applications for PCS are processed on a first-come, first-served basis.  (Am. Compl. ¶ 45.)

The next step is for the applicant to obtain an evaluation from a Managed Long-Term Care organization ("MLTC") as to exactly how many hours of PCS to which he or she is entitled.  (Am. Compl. ¶ 30.)  After that, the applicant must contact Maximus to complete the enrollment.  (Id.)  Plaintiffs allege that applicants may only enroll with an MLTC plan for services at the beginning of the month;

---

[6]      The authorization is usually limited to a six-month period.  Id. at § 505.14(b)(5)(iii).

enrollments are often delayed and applicants may have to wait until the start of the following month to begin receiving services.  (Am. Compl. ¶ 31.)  To actually furnish PCS, the MLTC plan assigns the applicant to a licensed home care agency.  (Am. Compl. ¶ 32.)  MLTCs are overseen by the New York State DOH.  N.Y. Pub. Health Law § 44.3-f.

There is also an expedited process for PCS authorization for situations in which an applicant needs the services "immediately to protect his or her health or safety."  18 NYCCRR § 505.14(b).  This provision has recently been amended— effective July 6, 2016—to require expedited procedures for those with immediate need, including a seven-day deadline for the determination as to both Medicaid eligibility and PCS eligibility.  (See Pls.' Ltr., Jun. 15, 2016, Ex. A, at 2-3.) Plaintiffs have not alleged that they qualified for an immediate need assessment.[7]

### 4.   Timeliness Requirements

This case concerns the time it takes for the above process to be completed. Plaintiffs allege that it must be completed within the 45 / 90 day period set forth in 42 C.F.R. § 435.912, which all parties concede at least governs Medicaid eligibility determinations (and is discussed further below).

The federal Medicaid statute sets forth timing requirements for certain aspects of the Medicaid application process.  Specifically, 42 U.S.C. § 1396a(a)(8)

---

[7]      Although defendants had made arguments regarding a stay of this action pending the results of the proposed regulations and the Konstantinov v. Daines action in New York Supreme Court, the fact that the regulations have already been issued and shall go into effect on July 6, 2016 moots the argument regarding a stay.

provides that states must "provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." The Medicaid Act does not define a specific time limit for "reasonable promptness" for furnishing medical assistance. A 2001 guidance letter issued by the Centers for Medicare and Medicaid Services ("CMS") in the U.S. Department of Health and Human Services ("HHS") states that § 1396a(a)(8)'s "reasonable promptness" is ultimately "governed by a test of reasonableness." It also states that the "urgency of an individual's need, the health and welfare concerns of the individual, the nature of services required, the potential need to increase the supply of providers, the availability of similar or alternative services, and similar variables merit consideration in such a test of reasonableness." (See Decl. of Aytan Y. Bellin, Ex. A, Olmstead Update No. 4, Jan 10, 2001 ("Olmstead Update"), at 6.)[8] It adds that if the need for "a change of living arrangement is required," the requirement of "'reasonable promptness' could mean 'immediate.'" (Id.)

As for the eligibility determination, 42 C.F.R. § 435.912(c)(3) requires that "the determination of eligibility for any applicant may not exceed—(i) Ninety days for applicants who apply for Medicaid on the basis of disability; and (ii) Forty-five

---

[8]     Although the Olmstead Update was not actually attached as an exhibit to the Amended Complaint, it is integral to the Amended Complaint and is incorporated by reference—indeed, it is the very basis for one of plaintiffs' claims. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal quotation marks omitted)). The Court may therefore properly consider it in connection with this motion

days for all other applicants."[9]

      B.    <u>Factual Allegations</u>

          1.   <u>Sylvia Hanley</u>

Plaintiff Sylvia Hanley resides in Woodside, Queens. She is 55 years old and suffers from rheumatoid, psoriatic, osteoarthrisis and cardiac disease. The Social Security Administration has determined that she is disabled and she receives disability benefits under SSDI. As a result of her medical conditions, she requires significant assistance with daily activities such as ambulation, cooking, bathing, dressing, and procuring groceries. (Am. Compl. ¶¶ 33-35.)

Plaintiffs allege that defendants failed to render a decision on Hanley's application for Medicaid-funded PCS services for more than 90 days. The chronology is as follows: on April 16, 2015, Hanley submitted a Medicaid application to the NYCHRA, requesting Medicaid-funded PCS. Her application was on the basis of disability. On July 27, 2015 (102 days after her initial application), NYCHRA determined that she was eligible for Medicaid. Through an attorney representative, Hanley contacted Maximus to schedule her CFEEC evaluation. (Am. Compl. ¶¶ 36-38.) She filed suit three days later on July 30, 2015. As of the date Hanley filed her initial Complaint, she had not received a determination as to the number of PCS hours to which she is entitled; there is no allegation as to whether and when she received any such determination.

---

[9] New York regulations also require that local social service districts like NYHRA make the basic Medicaid eligibility determination within 45 days of the application (or 90 days if the application is based on disability status). 18 NYCCRR § 360-2.4(a).

2.    Alan Blumkin

Plaintiff Alan Blumkin is 72 years old and a resident of Brooklyn, New York. He suffers from drop foot, ulcerative colitis, asthma, depression / anxiety, and spinal stenosis.  As a result, he requires significant assistance with daily activities such as ambulation, transferring, toileting, and cooking.  (Am. Compl. ¶ 40.)

Plaintiffs allege that defendants failed to render a decision on Blumkin's application for Medicaid-funded PCS services for more than 45 days.  On or about May 20, 2015, Blumkin submitted a Medicaid application to the NYCHRA, requesting Medicaid-funded PCS.  His application was not on the basis of disability. On or about August 14, 2015 (86 days after the initial application), NYCHRA determined that he was eligible for Medicaid, but had not yet calculated how much excess monthly income he would have to contribute to his care.  (Am. Compl. ¶¶ 41-42.)  Blumkin filed the Amended Complaint five days later on August 19, 2015.  As of that date, there was no information as to whether and when Blumkin contacted Maximus to schedule his CFEEC evaluation for PCS.

3.    Plaintiffs' Claims

Plaintiffs assert two causes of action, both via 42 U.S.C. § 1983, in their Amended Complaint.  The first cause of action is that defendants "have violated and will violate 42 U.S.C. [§] 1396a(a)(8) and 42 C.F.R. §435.912."  The second cause of action is that defendants "have violated and will violate the Due Process Clause of the 14th Amendment to the United States Constitution."  (Am. Compl. ¶¶ 58, 60.)

Plaintiffs' allegations against defendants are better fleshed out in their class

10

allegations.  Plaintiffs Hanley and Blumkin seek to represent individuals who are

"[a]ll current and future New York State Medicaid applicants for [PCS] who have

applied or will apply for Medicaid-funded [PCS]," separated into three sub-classes:

- Class A, comprising of such individuals "for whom Defendants have failed and will fail to utilize most or all of the factors with respect to Medicaid applicants—that HHS has identified as necessary—for determining how quickly to render decisions on applications for Medicaid-funded PCS and to provide or pay for such services";

- Class B, comprising of such individuals whose applications are "based on factors other than disability, for whom Defendants have not rendered or will not render decisions on such applications, and for whom Defendants have not provided or paid for or will provide or pay for Medicaid-funded personal care services within 45 days of the submission of the Medicaid application for such [PCS]."

- Class C, comprising of such individuals whose applications are "based on disability, for whom Defendants have not rendered or will not render decisions on such applications, and for whom Defendants have not provided or paid for or will provide or pay for Medicaid-funded personal care services within 90 days of the submission of the Medicaid application for such [PCS]."

(Am. Compl. ¶ 49.)

In effect, plaintiffs bring the following claims:

- That defendants violated 42 C.F.R. § 435.912(c)(3) because the two-step eligibility process (of determining Medicaid eligibility first and only thereafter determining eligibility for PCS) extends beyond the 45/ 90 day regulatory timeframes.

- That defendants violated 42 U.S.C. § 1396a(a)(8) because the process of determining eligibility for PCS slows down the process of furnishing actual medical assistance, in violation of the statute's "reasonable promptness" requirement;[10]

---

[10]      As discussed further below, plaintiffs do not specifically allege, but do argue in their briefing, that NYCHRA's untimely determination of basic Medicaid eligibility violates both 42 C.F.R. §

11

- That defendants violated 42 U.S.C. § 1396a(a)(8) because federal guidelines regarding this statute provide that applications should be processed on basis of whether applicants have various factors such as medical need, and not on a first-come, first served basis; and

- That defendants violated the due process clause of the Fourteenth Amendment by failing to timely process their applications for Medicaid-funded PCS.

## II.   STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, a plaintiff must provide grounds upon which his claim rests through "factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In applying this standard, the Court accepts as true all well-pled factual allegations, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Id. The Court will give "no effect to legal conclusions couched as factual allegations." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at

---

435.912's 45/90 day deadlines but also the "reasonable promptness" requirement of 42 U.S.C. § 1396a(a)(8).

555).  A plaintiff may plead facts alleged upon information and belief "where the facts are peculiarly within the possession and control of the defendant." <u>Arista Records, LLC v. Doe 3</u>, 604 F.3d 110, 120 (2d Cir. 2010).  But, if the Court can infer no more than the mere possibility of misconduct from the factual averments—in other words, if the well-pled allegations of the complaint have not "nudged [plaintiff's] claims across the line from conceivable to plausible"—dismissal is appropriate.  <u>Twombly</u>, 550 U.S. at 570; <u>Starr</u>, 592 F.3d at 321 (quoting <u>Iqbal</u>, 556 U.S. at 679).

A court may properly consider documents and contracts attached to or incorporated by reference in a complaint on a Rule 12(b)(6) motion to dismiss. <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007); <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002).

## III.   DISCUSSION

### A.   <u>Scope of Applicability Eligibility Determination Deadlines</u>

Plaintiffs' principal position is that the 45/ 90 day timeframes set forth in 42 C.F.R. § 435.912 apply to not only the determination of eligibility for Medicaid but also the specific determination of whether an individual is entitled to Medicaid-funded PCS.[11]  Defendants contend that the timeframes set forth in § 435.912 apply

---

[11]      Defendants argue—and plaintiffs do not appear to contest—that the timeframes set forth in § 435.912 applies only to the determination of eligibility and not to the actual provision of services. But whether these timeframes apply to the determination of Medicaid eligibility <u>overall</u> or for <u>specific</u> services is in dispute.

only to the initial Medicaid eligibility determination and not to the PCS application determination.[12]  This Court agrees.

The Court draws its conclusion from, <u>inter alia</u>, its review of the structure and text of the statutes and regulations as discussed below.

The Medicaid statute itself appears to recognize a difference between eligibility for Medicaid and eligibility for specific services.  42 U.S.C. § 1396a(a)(17) provides that a state plan must "include reasonable standards . . . for determining eligibility and the extent of medical assistance under the plan . . . ."  Indeed, the Second Circuit has interpreted this subsection to consist of "two separate determinations: (1) whether an individual is 'eligible for' Medicaid and, if so, (2) the 'extent of' benefits to which he is entitled."  <u>Wong v. Doar</u>, 571 F.3d 247, 251 (2d Cir. 2009) (internal alterations omitted).

Furthermore, the timeframe language in 42 C.F.R. § 435.912(c)(3) is contextualized by other portions of the same regulation, including another sub-section on timeliness that states that the state agency must "establish in its State plan timeliness and performance standards for, promptly and without undue delay—(1) Determining eligibility for Medicaid for individuals who submit applications to the single State agency or its designee . . . "  42 C.F.R. § 435.912(b).

---

[12]     As an initial matter, since DOH has delegated responsibility for Medicaid eligibility decisions for residents of New York City to NYCHRA and does not itself make any Medicaid eligibility determinations, the first claim must be dismissed as to DOH.

Thus, the eligibility timeliness standards contemplated in § 435.912(c)(3) reference "[d]etermining eligibility for Medicaid," not eligibility for specific services.

The regulations surrounding § 435.912 also appear to recognize the same dichotomy.  The Court provides a few examples below.

First, the section immediately preceding § 435.912 on "Determination of eligibility," § 435.911, discusses eligibility criteria for Medicaid (for example, income and immigration status) and is devoid of any discussion regarding coverage for specific services.

Second, the regulations include a series of subsections under the header "Income and Eligibility Verification Requirements."  Section 435.952(a) under this subheading states:

> The agency must promptly evaluate information received or obtained by it . . . to determine whether such information may affect the eligibility of an individual <u>or</u> the benefits to which he or she is entitled.

42 C.F.R. § 435.952 (emphasis added).  This language indicates a difference between the determination of "the eligibility of the individual" and "the benefits to which he or she is entitled."  <u>Id.</u>

Third, § 435.404—which is a provision under the subpart "General Eligibility Requirements"—requires that the agency reviewing eligibility "must allow an individual who would be eligible under more than one category to have his eligibility determined for the category he selects."  This again supports defendants' reading of "eligibility" as "for" either categorically-needy Medicaid or medically-needy Medicaid, and not for a specific service.

Fourth, the regulations on "[p]eriodic renewal of Medicaid eligibility," 42 C.F.R. § 435.916, make it quite clear that the term "eligibility" as used by the regulations refers specifically to the basic Medicaid eligibility determination. Section 435.916(a) refers to "Renewal of individuals whose Medicaid eligibility is based on modified adjusted gross income methods" and discusses renewed determinations of "financial eligibility" based on various sources of information. Section 435.916(b) refers to "Redetermination of individuals whose Medicaid eligibility is determined on a basis other than modified adjusted gross income" and specifically instructs the state agency to "make a redetermination of eligibility" on the basis of available information.[13]

Defendants' interpretation also makes practical sense. After the NYCHRA determines that an applicant is "eligible" for Medicaid services based on categorical or medical need, that individual is then entitled to begin receiving Medicaid-funded services;  the fact that one type of services requires an additional evaluation does not strip the applicant of general Medicaid eligibility and entitlement to receive other services.  Consider the following example:

---

[13]    Plaintiffs cite to King by King v. Sullivan, 776 F. Supp. 645, 657-59 (D.R.I. 1991), a case in which the district court characterized the state's "redetermination of a current recipient's eligibility" for intermediate-care facilities for a person with intellectual disabilities to be "a level-of-care determination" and subject to the regulatory timeframe.  Because such an approach is contrary to the statutory and regulatory schema, this Court declines to adopt a position akin to that in King. The Court also notes that nothing in Doe, 1-13 ex rel. Doe Sr. 1-13 v. Bush, 261 F.3d 1037 (11th Cir. 2001) necessarily supports plaintiffs' reading of § 435.912 and the case instead refers to a court order that set a deadline.

- Ms. A—who is not disabled—applies for Medicaid on the basis of her enrollment in the Supplemental Security Income program; she also applies simultaneously for PCS.

- Her application for Medicaid is approved on day 45 after her initial application.

- On day 46, she suffers an accident which requires her to obtain an X-ray, which is a required covered service under Medicaid.

- Her application for PCS is approved on day 100.

Ms. A was found eligible for Medicaid on day 45. At that point, she is covered for Medicaid-funded laboratory X-ray services. See 42 C.F.R. § 440.210(1); id. at § 440.30. Her application for PCS, however, is a separate determination. In fact, she might be found not eligible for PCS—but that does not change the determination that she was Medicaid-eligible and could receive other services under Medicaid not subject to another level of authorization.

Now consider a slightly different example:

- At the time of her initial Medicaid application, Ms. B is in a similar position to Ms. A in all relevant respects—she is not disabled and on SSI—except she does not apply for PCS.

- Ms. B's application for Medicaid is approved on day 45 after her initial application.

- In the meantime, Ms. B does not require any medical or other treatment under Medicaid.

17

- 100 days after her initial application for Medicaid, Ms. B suffers a serious medical incident.  She is briefly hospitalized and after release, requires PCS.  She applies for PCS on day 110.

Here, Ms. B is a Medicaid-eligible individual who <u>later</u> applies for PCS.  Under plaintiffs' theory, Ms. A's Medicaid eligibility plus PCS eligibility must be determined within 45 days, but Ms. B's PCS eligibility would of course not be subject to the same 45-day period as her Medicaid eligibility.  This does not make sense.  The Court also notes that the fact that New York had used a one-step process prior to 2012 to render a decision on both initial Medicaid eligibility and PCS applications at the same time does not suggest that plaintiffs' legal position prevails—the use of that one-step process does not mean that it was mandated by the regulations.

Moreover, if § 435.912's timeliness provisions applies to eligibility for PCS, it would also logically have to apply to eligibility for other services.  For example, a number of services that may be covered under Medicaid are only so if the individual can demonstrate that they are "medically necessary."  <u>See</u> <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1006 (1982) (discussing certification of medical necessity of nursing home care); <u>DeSario v. Thomas</u>, 139 F.3d 80, 94 (2d Cir. 1998), <u>cert. granted, judgment vacated sub nom. on other grounds</u> <u>Slekis v. Thomas</u>, 525 U.S. 1098 (1999) (discussing impositions of limitations on medically necessary durable medical devices).  To say such determinations of medical necessity are also subject to § 435.912's strictures would be without basis.  In addition, in cases where courts

18

have considered the timeliness for determinations of eligibility for specific services, they have sometimes imposed <u>separate</u> requirements.  See <u>Ladd v. Thomas</u>, 14 F. Supp. 2d. 222, 225 (D. Conn. 1998) (establishing a 20 day deadline under § 1396a(a)(8) for determinations on prior authorization requests for durable medical goods for those already approved for Medicaid eligibly); <u>Kessler v. Blum</u>, 591 F. Supp. 1013 (S.D.N.Y. 1984) (applying § 1396a(a)(8) and setting a 21-day deadline for the prior approval program for payment for services).  Adopting plaintiffs' reading of the regulation would result in sweeping these determinations under 45/90 day timeframe, which the Court declines to do.

The Court is very mindful of the fact that determining what services or level of care to cover is a process that may be fraught with delay.  Desperately poor individuals who already have waited many weeks for Medicaid eligibility determinations may have to wait even longer for a decision on whether they actually can obtain the critical service they were seeking in the first place. However, § 435.912 is not the correct avenue of redress for that problem.  Instead, 42 U.S.C. §1396a(a)(8)'s "reasonable promptness" requirement provide an avenue for protecting the applicant's rights in that context.  The Court will discuss this further in Section C below.

B.   <u>NYCHRA and Untimely Medicaid Eligibility Determinations</u>

In opposition to this motion, plaintiffs argue that NYCFRA failed to make even the basic Medicaid eligibility determinations within 42 C.F.R. § 435.912's 45/90 day timeframes.  Notably, plaintiff's allegations in the Amended Complaint—

up through and including their prayer for relief—regards only the timeframe within which PCS eligibility must be determined, not basic Medicaid eligibility.

Defendants argue that because plaintiffs' pleadings focus on PCS eligibility and not basic Medicaid eligibility determinations, ruling against plaintiffs on their interpretation on the timeframe issue resolves the entirety of the suit against NYCHRA.  The Court agrees.  As presently cast, plaintiffs' allegations are entirely based on the theory that the 45/90 day deadline encompasses the determination of PCS eligibility, which the Court has rejected above.  The allegations in the Amended Complaint as it stands are insufficient to support a claim based on the untimeliness of basic Medicaid eligibility.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (requiring plaintiffs to give defendants "fair notice of what the . . . claim is and the grounds upon which it rests").  Plaintiffs have alleged that defendants "have violated and will violate 42 U.S.C. [§] 1396a(a)(8) and 42 C.F.R. § 435.912(c)(3)," (Am. Compl. ¶ 58), and while the Second Amended Complaint does allege that Ms. Hanley and Mr. Blumkin's initial eligibility determinations were untimely.  However, the Amended Complaint never states that independent of the PCS issue, defendants violated the timeframes under 42 C.F.R. § 435.912(c)(3).  For example, while plaintiffs have alleged that defendants' approval process for PCS is "so cumbersome, it is virtually guaranteed to fail the timeliness criteria mandated by federal law," the allegation is as to PCS, not as to basic eligibility determinations.  (Am. Compl. ¶ 5; see also Am. Compl. ¶¶ 46, 56.)  Thus,

defendants' motion to dismiss this claim are GRANTED with an opportunity for plaintiffs to replead.

C.   Reasonable Promptness in Furnishing Services

1.   Reasonable Promptness Violations Based on Regulatory Timeframe

In opposition to this motion, plaintiffs also contend that defendants have violated the Medicaid Act's requirement that aid be furnished with "reasonable promptness." (Am. Compl. ¶ 6;  42 U.S.C. § 1396a(a)(8).)[14]

Plaintiff's theory is that the "reasonable promptness" requirement refers to the entire process of applying for and receiving medical assistance:  that is, 1) how quickly defendants render decisions on Medicaid eligibility, 2) render decisions on PCS eligibility, and 3) provide actual PCS services.  Their position is that an unreasonable delay at any of the 3 steps is a violation of § 1396a(a)(8).

The allegations in the Amended Complaint do not support a violation of the "reasonable promptness" provision.  First, because plaintiffs filed suit virtually immediately after receiving their Medicaid eligibility determinations, there are no facts supporting a plausible violation based on the untimeliness of PCS eligibility and PCS services in steps 2 and 3 above.  And because, as discussed above, plaintiffs have failed to adequately plead a violation of 42 C.F.R. § 435.912(c)(3)

---

[14]      In making their argument, plaintiffs also rely on a regulation that was not pled in their Amended Complaint.  42 C.F.R. § 435.930 requires aid to be furnished "promptly to beneficiaries without any delay caused by the agency's administrative procedures."  Because plaintiff made no mention of this regulation in their Amended Complaint, the Court cannot allow them to raise a new claim in opposition to motion to dismiss.

based on untimeliness of basic Medicaid eligibility determinations, they also cannot sustain a violation of 42 U.S.C. § 1396a(a)(8) based on such a regulatory violation.[15] See Twombly, 550 U.S. at 555.

> 2.   Triaging Applications

Plaintiffs also allege that defendants' first-come, first-served approach to processing PCS applications and providing PCS services runs afoul of CMS's interpretation of Section 1396a(a)(8)'s "reasonable promptness" requirement.  (See Am. Compl. ¶¶ 19; 49.)  Plaintiffs allege that CMS requires that the "promptness with which a State must provide a needed and covered Medicaid service must be governed by a test of reasonableness" that includes evaluation of "an individual's need, the health and welfare concerns of the individual, the nature of services required, the potential need to increase the supply of providers, the availability of similar or alternative services, and similar variables" under a "test of reasonableness."  (Am. Compl. ¶ 19.)[16]  While the Amended Complaint does not specifically cite to the CMS document that provides this guidance, the language quoted above is identical to that of the Olmstead Update and the parties agree as to its provenance.  (See Olmstead Update at 6.)

---

[15]     The Court does not make a determination at this time as to defendant's argument that a violation of the regulation does not constitute a violation of the statute.

[16]     While plaintiffs appear to only allege that applications for Medicaid which seek PCS must be "triaged" instead of processed on a first-come, first-serve basis, their interpretation of the CMS guidance suggests all Medicaid applications should be processed that way.

The Court need not resolve the level of deference that should be paid to the Olmstead Update, which is CMS guidance letter from 2001, and whether the language in this letter can give rise to a claim under § 1983[17] because it is clear that plaintiffs have not alleged that defendants have contravened the CMS interpretation letter.

First, when read in context, the language plaintiffs highlight from the Olmstead Update do not command the states to exercise a triage method for all Medicaid applicants.  The section that plaintiffs have underscored certainly emphasizes medical need, but couched such need in the context of "variables [that] merit consideration."  It further notes that "the question of reasonable promptness is a difficult one.  We wish to call the issue to your attention . . . The issue will receive more attention from us in the future and is already receiving attention by the courts."  (Olmstead Update 6.)  This language of suggestion and collaborative review can be contrasted to other portions of the letter that provide imperatives to states;  for example, the paragraph above commands, "a State may not limit access

---

[17]        The Second Circuit has held that even relatively informal interpretations by HHS are entitled to "some significant measure of deference."  Wong v. Doar, 571 F.3d 247, 260 (2d Cir. 2009); Cmty Health Ctr. v. Wilson-Coker, 311 F.3d 132, 138 (2d Cir. 2002).  However, it is not clear to this Court that this 2001 Olmstead Update falls into the same category as the regulatory guidance issued in the above opinions.  See Christensen v. Harris Cty., 529 U.S. 576, 587 (2000) (holding that opinion letters without notice and comment rulemaking may be subject to deference under Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944) only if "those interpretations have the power to persuade" (internal citations omitted)).

        It is also not clear to the Court whether affording Skidmore deference to these HHS interpretations would necessarily result in a private right of action based solely on the interpretation language alone.  The Second Circuit has only held that if there is "a valid regulation" that "further defines or fleshes out the content" of a right arising under a statute, "then the statute—in conjunction with the regulation—may create a federal right as defined by the regulation."  Shakhnes v. Berlin, 689 F.3d 244, 251 (2d Cir. 2012) (internal alterations and citations omitted).

to a covered waiver service simply because the spending for such a service category
is more than the amount anticipated in the budget."  (Id.)   On the same page,
another directive states, "States are not allowed to place a cap on the number of
enrollees who may receive a particular service within the waiver."  (Id.)

Second, even if the Olmstead Update does provide a command to states to
consider medical need, plaintiffs have failed to show why defendants must go above
and beyond the existing New York state regulations regarding immediate-need
applicants for PCS.  Those regulations—now amended—provide for expedited
review of Medicaid and PCS eligibility for individuals who meet specific conditions
of immediate need including a doctor's order and a signed attestation that other
options are not available to the individual.  (See Pls.' Jun. 15, 2016 Ltr., Ex. A, at 8-
9.)  Given the language of the Olmstead Update only suggests that the individual's
need and the availability of other services are worthy of consideration, and given
that the Olmstead Update specifically references "immediate" provision of services,
the Court agrees with defendants that plaintiffs have failed to state a claim for
violations of § 1396a(a)(8)'s reasonable promptness requirements based on any
further triage requirements beyond the immediate need asses sment already
available.

    D.    <u>Due Process</u>

Plaintiffs assert that defendants also violated the Due Process Clause of the
Fourteenth Amendment.  To adequately plead a due process claim, plaintiffs must
show 1) "they possess a liberty or property interest protected by the Due Process

Clause" and 2) "what process plaintiffs were due before they could be deprived of that interest."  <u>Kapps v. Wing</u>, 404 F.3d 105, 112, 118 (2d Cir. 2005).  Defendants' challenge to plaintiffs' Due Process claim is solely on the second prong.

First, defendants argue that the due process to which plaintiffs are entitled is a hearing on their application as required by 42 U.S.C. § 1396a(a)(3).  Defendants point out that plaintiffs did not avail themselves to such a hearing, and therefore defendants have not violated due process.  Plaintiffs, on the other hand, argue that because defendants' failures are systematic, the hearing process would not protect their due process.  The Court declines to reach the question of whether the state hearing process pursuant to § 1396a(a)(3) would or would not satisfy the constitutional due process requirement.

Rather, the Court agrees with defendants that plaintiffs' pleadings are conclusory and insufficient to assert a due process claim.  Based on the Amended Complaint, plaintiffs have not asserted any facts regarding what process they were due and what actions taken or inaction by defendants were constitutionally inadequate.[18]  The Amended Complaint is silent as to whether there was any due process violation at the Medicaid eligibility determination stage—which is the only delay that plaintiffs have adequately alleged under the Complaint, but as a

---

[18]     For example, it is certainly conceivable that plaintiffs might have brought a claim that they did not have an opportunity to a fair hearing as required under 42 U.S.C. § 1396a(a)(3) (requiring that those "whose claim for medical assistance . . . is not met with reasonable promptness" be given an "opportunity for a fair hearing.").  Plaintiffs appear to hint at this in a single sentence in their opposition brief regarding lack of notice as to any hearing rights, but this unfortunately comes too late as it was not pled in the Amended Complaint.  (<u>See</u> Pls.' Br. at 18.)

25

statutory violation.  The only mention of due process in the entire Amended Complaint is the conclusory sentence, "By virtue of the foregoing, Defendants . . . have violated and will violate the Due Process Clause of the 14th Amendment to the United States Constitution."  (Am. Compl. ¶ 60.)  This is insufficient to meet pleading standards.  The Court shall grant plaintiffs an opportunity to replead.

IV.    CONCLUSION

The Court has considered the parties' other arguments and finds that they are without merit.  For the reasons stated above, defendants' motions to dismiss are GRANTED.  The Court will allow plaintiffs one opportunity to replead their complaint consistent with the above not later than August 22, 2016.

SO ORDERED.

Dated:      New York, New York
            July 21, 2016

_____
      KATHERINE B. FORREST
      United States District Judge

26